UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SPIGOT, INC., POLARITY
TECHNOLOGIES LTD., and
EIGHTPOINT TECHNOLOGIES
LTD.,

    Plaintiffs,

v.                                     Case No:   2:18-cv-764-FtM-29NPM

JEREMY MATTHEW HOGGATT and
MEDIAVO, INC.,

    Defendants.

# ORDER

This is a trade-secret-infringement action between companies who compete nationally, if not worldwide, in the field of internet advertising, such as bringing consumers and advertisers together based on the consumers' use of internet search engines like Yahoo. In September 2016, a company in the Cayman Islands known as Eightpoint Technologies allegedly acquired certain trade secrets from a company in Kansas City, Missouri known as Adknowledge[1] pursuant to an asset purchase agreement. Eightpoint licenses these trade secrets to an affiliated company in Cyprus known as Polarity, and to an affiliated company in Florida known as Spigot. Eightpoint and its affiliates allege that, after Eightpoint purchased the purported trade secrets, Defendant Jeremy Matthew Hoggatt, a citizen of Missouri and then-employee of Kansas City-based Adknowledge, somehow "compiled" the trade secrets and then "absconded" with them in October 2017

---

[1] Adknowledge is now known as V2 Ventures Group. (Doc. 72, p.1). But the parties continually refer to this entity as Adknowledge, and to avoid any confusion the Court does so here.

to form Defendant Mediavo, another Kansas City-based company. Mediavo competes with Defendants by allegedly misusing the purported trade secrets, and allegedly engaging in improper coding practices by, among other things, distributing certain pieces of software, which work with internet consumers' browsers (such as Chrome, Explorer, Safari or Firefox), after programming them to interfere with similar internet-browser modules (known as "extensions") distributed via the internet by Plaintiffs.

Though Plaintiffs allege that Hoggatt is bound by a non-competition clause in the asset purchase agreement prohibiting misuse of the purported trade secrets, they do not seek to enforce it here. Instead, Plaintiffs apparently seek via their Complaint in this action the potentially extra-territorial application of Florida's trade secrets act and Florida's unfair trade practices act to recover at least $10 million in damages allegedly attributable to "Defendants' directly competing on the same keywords in Google's AdWords advertising platform, and other platforms." (Doc. 5, p. 24).

In December 2018, Defendants responded to the Complaint by moving to dismiss for lack of personal jurisdiction, to dismiss or transfer for improper venue, and to dismiss for failure to state a claim. (Doc. 16). The motion is supported by a detailed declaration from Hoggatt, founder and CEO of Mediavo, attesting, among other things, that "[w]hatever intellectual property Plaintiffs may have purchased from Adknowledge … was owned by Adknowledge in Kansas City, Missouri," and that if he had acquired any trade secrets from Adknowledge, he would have done so in Kansas City. (Doc. 16-1, p.5 ¶ 34).

Duly acknowledging circuit precedent, Defendants suggested in their motion to dismiss that "the Court should order a brief round of jurisdictional discovery." (*Id.*, p.16).

Unfortunately, for a variety of reasons, the round of jurisdictional discovery has been anything but brief. Instead, some ten months later, this matter is before the Court on:

- Defendants' Motion to Quash or, in the Alternative, for Entry of a Protective Order as to Plaintiffs' Third-Party Subpoenas (Doc. 57);

- Plaintiffs' Motion for Reconsideration of Magistrate's Order Denying in Part Their Motion to Compel Jurisdictional Discovery (Doc. 58);

- Plaintiffs' Emergency Motion to Compel Deposition Testimony of Jeremy Matthew Hoggatt in His Personal Capacity and as Mediavo Inc.'s Corporate Representative and Entry of Protective Order (Doc. 59); and,

- Plaintiffs' Motion for Leave to File a Supplemental Declaration to Clarify Defendants' Misrepresentations in their Opposition to Plaintiffs' Motion to Compel Depositions (Doc. 64).

For the reasons set forth below, the motion to quash is granted, the motion for reconsideration is denied, the motion to compel depositions is granted in part and denied in part, and the motion for leave to file a supplemental declaration is denied as moot.

**I.     The Scope of Jurisdictional Discovery**

Rule 26 of the Federal Rules of Civil Procedure governs the scope of discovery in civil cases. In pertinent part, the Rule states:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).  But jurisdictional discovery should be "narrowly tailored" to personal jurisdiction issues implicated by the motion to dismiss.  *See Segregated Portfolio 164 v. IS Agency, Inc.*, Case No. 8:13-cv-694-T-33TGW, 2013 WL 5744333, *6 (M.D. Fla. Oct. 23, 2013).  Accordingly, "courts generally permit depositions confined to the issues raised in the motion to dismiss."  *Id.* at *5 (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)); *see also Frontline Int'l, Inc. v. Edelcar, Inc.*, Case No. 6:10-cv-1351-Orl-31DAB, 2011 WL 13209612, *1 (M.D. Fla. Apr. 6, 2011) (jurisdictional-discovery deposition of defendant's corporate representative limited to a "narrow range of jurisdictional topics concerning minimum contacts.").

Having affirmatively alleged that neither Defendant is domiciled in Florida, Plaintiffs do not appear to contend that either Defendant is at home in Florida such that the exercise of general personal jurisdiction would be proper for any and all claims that might be asserted against them.  So, Plaintiffs must demonstrate that the exercise of case-specific personal jurisdiction would be proper as to each Defendant.  In other words, that the claims arise from actions of the Defendants directly and substantially connected with this state.  *See Walden v. Fiore*, 571 U.S. 277, 290 (2014) ("The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.").

Hence, the salient inquiries at this stage of the matter would explore whether Defendants' allegedly unfair business practices and alleged misappropriation occurred within Florida.  For instance, when and where did Hoggatt allegedly exercise improper dominion over the purported trade secrets and transfer them to Mediavo?  And where did

Mediavo's employees or service providers allegedly misuse trade secrets and allegedly engage in improper coding practices?

Further, since Defendants argue, based on a professed lack of minimum contacts with Florida and the absence of their purposeful availment of its laws, that due process counsels against the exercise of personal jurisdiction even if Florida's long-arm statue may be satisfied, Plaintiffs may briefly examine Defendants' jurisdictional contentions. *See Walden*, 571 U.S. at 284 (2014) ("Due process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant – not the convenience of plaintiffs or third parties."); *see also Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ("…it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.").

## II.     Defendants' Motion to Quash

Following up on Defendants' suggestion that the parties should undertake a limited round of jurisdictional discovery to determine whether any purported trade secrets were acquired in either Florida or Missouri, and which of the three Plaintiffs acquired them (Doc. 16, pp. 17-18), the parties jointly requested leave to conduct "bi-lateral jurisdictional discovery with time and scope limits." (Doc. 17, p.1). In particular, they sought leave to conduct discovery of each other over a four-month period. (*Id.*, pp. 2-3). Granting such leave, the Court gave Plaintiffs up to and including April 17, 2019, to respond to Defendants' Motion to Dismiss. (Doc. 18). Thereafter, the parties further memorialized in their Case Management Report "that this initial phase of discovery" would focus on the personal-jurisdiction determination, and they agreed that their limited depositions and

interrogatories of each other "during the jurisdictional discovery period" would not count against the standard discovery limits that would otherwise govern the merits phase of discovery. (Doc. 22, pp. 7, 9; *see also* Doc. 28, p. 2 § I.C. ("The parties may agree by stipulation on other limits on discovery.")). Subsequently, the Court granted joint motions to extend the jurisdictional discovery period to May 31, 2019 (Doc. 35), and then to August 16, 2019 (Doc. 49).

Contrary to this stipulated and Court-sanctioned bifurcation of discovery, by which the parties were to conduct discovery of each other concerning the personal-jurisdiction issues, Plaintiffs attempted in May and June of 2019 to obtain both merits and jurisdictional discovery from third parties by serving four subpoenas for documents on Adknowledge, Media.net, Bold Science Media, LLC, and Scott Reinke (Mediavo's former general counsel). Arguing that these third-party subpoenas fall outside the permissible scope of jurisdictional discovery in this case, Defendants seek an order quashing them. (Doc. 57).

Pursuant to Rule 45, a court may quash or modify a subpoena or, alternatively, specify conditions for an appearance or production. Fed. R. Civ. P. 45(d)(3). Further, the Court has broad discretion to manage the scope and sequence of discovery. *See* Fed. R. Civ. P. 26.; *see also Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1197 (11th Cir. 1991) ("The trial court … has wide discretion in setting the limits of discovery, and its decisions will not be reversed unless a clearly erroneous principle of law is applied, or no evidence rationally supports the decision."). Here, the parties jointly requested and the Court approved an initial phase of discovery during which the parties would conduct limited discovery of each other concerning the personal jurisdictional issues. Indeed,

during this jurisdictional discovery period, Plaintiffs have repeatedly asserted that any merits discovery would be inappropriate. (*See*, *e.g.*, Doc. 57-1 (asserting no less than 43 such objections)).² The Court likewise finds that Plaintiffs' third-party subpoenas fall outside the scope of bilateral jurisdictional discovery, and they are therefore quashed.

### III. Plaintiffs' Motion for Reconsideration

On a similar note, before the Court for the third time is Plaintiffs' attempt to compel an answer to an interrogatory that, by Plaintiffs' own admission, goes to the merits of this case. Some nine months ago, Plaintiffs served Defendants with nearly fifty discovery requests, and one remains at issue:

> Interrogatory No. 18: Please provide a list of all Mediavo desktop extensions distributed by Hyperconnect Media, or any other desktop extensions distributed by Hyperconnect Media known to Hoggatt and Mediavo.

But as Defendants have repeatedly explained, this request attempts to force Mediavo to divulge the identity of the Internet-browser modules that it distributes via the Internet to consumers throughout the nation if not the world. (Docs. 36, p.8; 68, p.2). While the interrogatory asks about items "distributed by Hyperconnect Media" to Internet-users' computers as they browse the web, Hyperconnect Media is but one of a number of DBAs, or brands, associated with Mediavo. And while Hyperconnect was registered as a trade name for Mediavo by a Florida lawyer utilizing a form provided by the state of Florida,

---

² The Court notes that a review of the discovery responses and related motions in this case reveals that Plaintiffs unfortunately demonstrated a penchant for taking an unbalanced view toward jurisdictional discovery; viewing the scope of Defendants' permissible discovery far too narrowly while improperly pursuing a far broader scope for their own. *See*, *e.g.*, (Doc. 76-1, pp. 10-12 (Plaintiffs objecting to questions about whether the purported trade secrets were developed, maintained, or protected in Florida as being irrelevant to the personal-jurisdiction inquiry)).

there is apparently nothing more in Florida other than a mailbox in a UPS store associated with Hyperconnect.  (Docs. 76-2, p. 4; 75-1, pp. 1-2).  The domain name HyperconnectMedia.com is not registered or located in Florida, none of the persons who have owned or registered this domain name are located in Florida, none of the persons who program this website or provide customer or technical support for it are located in Florida, and none of the information gathered from this site's contact form is sent to Florida.  (Doc. 41, pp. 3-4).

Moreover, "Plaintiffs agree that the 'identity of the browser extensions distributed by Mediavo / Hyperconnect Media is a closely guarded and confidential trade secret,'" and they concede, first, that this information goes to "the heart of the broader dispute," and, second, that an answer to this interrogatory "will not necessarily provide information regarding Florida."  (Doc. 40, p. 7; *see also* Doc. 36-2, pp.2-4 ¶¶ 5-14 (attesting to the trade-secret status of this information)).  Accordingly, the Court denied Plaintiffs' motion to compel the Defendants to divulge this highly sensitive information during the jurisdictional-discovery phase of this litigation.  (Doc. 49).

Arguing that the Court must have somehow "misinterpreted" their arguments, Plaintiffs filed an Objection (Doc. 54), but since there was "nothing to suggest that the Order was clearly erroneous or contrary to law," the Objection was dismissed.  (Doc. 56).  Undaunted, Plaintiffs have filed a motion for reconsideration of the Court's refusal to compel an answer to Interrogatory No. 18 (Doc. 58), to which the Defendants have filed a response (Doc. 68).

Reconsideration of a court's prior order, however, is an extraordinary remedy and, thus, an authority that should be used sparingly.  *See Sprint Solutions, Inc. v. 4 U Cell,*

*LLC*, Case No. 2:15-cv-605-FtM-38CM, 2016 WL 6037240, *1 (M.D. Fla. Oct. 14, 2016). Courts have recognized three grounds to justify reconsideration: (1) an intervening change in the controlling law; (2) the availability of new evidence; (3) the need to correct clear error or prevent manifest injustice." *See Sussman v. Salem, Saxon & Nielsen, P.A.*, 153 F.R.D. 689, 694 (M.D. Fla. 1994). The Court's opinions are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure. *Carter v. Premier Rest. Mgmt.*, Case No. 2:06-cv-212-FtM-99DNF, 2016 WL 6037240, *1 (M.D. Fla. Sept. 13, 2006). In short, a motion for reconsideration is not an opportunity to simply reargue an issue the Court has once determined. *Id.*

That is all that Plaintiffs do here, and so they have needlessly burdened both the Defendants and this Court with presentations of the same arguments no less than three times. The motion for reconsideration is therefore denied.

### IV. Plaintiffs' Motion to Compel Deposition Testimony[3]

From the outset of the jurisdictional discovery period—and as early as December 2018—the parties contemplated that Plaintiffs would depose Defendant Hoggatt in his personal capacity and as the corporate representative of Mediavo, and that Defendants would take one or two depositions of the Plaintiffs. (Docs. 17, p.3 ¶ 6; 22, p. 7). Despite the limited and relatively straightforward inquiries to be conducted at this stage, however,

---

[3] While Plaintiffs labeled their motion as an "emergency," they apparently failed to appreciate that the use of the term "emergency" may only be used in the most extraordinary circumstances. Each judge in this Court has hundreds of civil and scores of criminal cases currently pending, and with speedy-trial rights and other interests at stake, the criminal cases take priority. When a motion is labeled an "emergency," the Court is compelled to immediately divert its attention from other pending matters and to focus on the purported emergency. Here, there is no pending threat of immediate or irreparable harm. An impending case-management deadline is not an emergency.

counsel managed to tie themselves up in knots with disputes about who would be deposed first and for how long; whether the depositions could go forward without resolving every issue concerning the production, review and potential filing of documents with the Court; and, the extent to which they and their clients were proactively taking reasonable steps to make themselves available for the depositions. This Court has sometimes found it necessary to take creative steps to resolve such issues, which counsel should have found a way to resolve themselves. *See, e.g., Avista Management, Inc. v. Wausau Underwriters Ins. Co.*, Case No. 6:05-CV1430ORL31JGG, 2006 WL 1562246, *1 (M.D. Fla. June 6, 2006) (requiring counsel to engage in a Friday afternoon game of "rock, paper, scissors" on the courthouse steps to resolve their inability to agree on the location for a Rule 30(b)(6) deposition). On this occasion, the Court will attempt to untie the parties' Gordian knot in a less imaginative fashion.

In the course of resolving this discovery dispute, a few observations based on the submissions of the parties are in order. First, as they now seem to be well aware, Defendants' initial reaction to Plaintiffs' July 2019 attempt to schedule the personal and corporate-designee deposition of Hoggatt was wholly inappropriate. With thirty days remaining in the twice-extended, jurisdictional-discovery period, and apparently willing to depose Hoggatt while the discovery issues discussed above (and below) remained unresolved, Plaintiffs asked Defendants' counsel on July 17 to confirm a date for the deposition. Defendants' response: "I'm sorry but it's too late. The Court won't extend grant [sic] you a further extension. And there is simply no time to take depositions." Not so.

While providing more notice is the better practice when reasonable to do so, the Court's local rules allow parties to notice depositions with only 14-days' notice. M.D. Fla. R. 3.02. Further, the deposition was noticed some six months prior, and the parties had been talking about scheduling it ever since. With so much time having passed since the service of the notice, Hoggatt should have already been fully prepared (or at least nearly so) to testify as Mediavo's designee, and Hoggatt and his counsel should have taken steps to make themselves available within the weeks that remained. *See Inglis v. Wells Fargo Bank, N.A.*, Case No. 2:14-cv-677-FtM-29CM, 2016 WL 4193858, *2 (M.D. Fla. Aug. 9, 2016) (finding 19 days' notice adequate for expert-witness depositions despite their professional obligations). If that was not reasonably possible, then dates within a week or two after the deadline should have been immediately offered and accepted. *See* Middle District Discovery (2015) at 6 ("Counsel, by agreement, may conduct discovery after the formal completion date").[4] Multiple options were available to ensure that Plaintiffs would have had the benefit of this deposition for their response to the motion to dismiss, such as a brief extension of time for the filing of the response, or leave to supplement the response as soon as the deposition transcript became available. Had counsel followed this course, the deposition would have taken place months ago.

The parties and their counsel must also be mindful of their obligations to facilitate the efficient progress of this case. A witness cannot declare weeks of unavailability because they would prefer to "prepare for and attend" business meetings and other

---

[4] It is evident from the submissions of the parties that counsel are familiar with the Court's local rules and guidelines, including the Court's Discovery Manual. Counsel are reminded that all such rules and guidelines are to be construed and employed by both the Court **and the parties** "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

events. While reasonable accommodations should be made for personal and professional obligations, the parties and their counsel must also reschedule events, delegate tasks, and take other reasonable steps to advance this case to a timely resolution consistent with the Court's orders. *Cf. Dude v. Congress Plaza, LLC*, No. 17-80522, 2018 WL 3432714, *4 (S.D. Fla. July 16, 2018) ("A party seeking to prevent or delay a deposition on medical grounds must make a specific and documented factual showing that the deposition will be dangerous to the deponent's health.") (cleaned up).

Further, the submissions of the parties reveal that counsel attempted to precondition the depositions of their clients based on the scheduling of the depositions of their opponents. But subjecting the scheduling of fact witness depositions to a game of "I'll show my cards, if you'll show yours first, or at the same time" is improper. *See* Fed. R. Civ. P. 26(d)(3); *see also Inglis*, 2016 WL 4193858, *2 (rejecting plaintiff counsel's attempt to control the sequence of expert witness depositions); *Bell v. Circle K. Stores, Inc.*, 8:18-cv-1296-T-SPF, 2018 WL 6656770, *1 (M.D. Fla. Nov. 13, 2018) (denying defendant's attempt to control sequence of discovery such that surveillance video would be withheld until after plaintiff was deposed). Such gamesmanship inevitably increases both the time and expense of litigation, as it has done here.

Turning to the substance at hand, the jurisdictional-discovery deposition of Hoggatt, in both his personal capacity and as the corporate designee of Mediavo, shall go forward. Upon the entry of this Order, Defendants shall immediately provide no less than six days that fall within the next six weeks for the deposition to take place, and Plaintiffs will accept one of them. Notwithstanding the deposition notices, Plaintiffs may elect to produce Hoggatt for deposition in Kansas City, Missouri, and the deposition will

be limited to: (a) when and where did Hoggatt allegedly acquire the purported trade secrets and transfer them to Mediavo; (b) where did activities related to Mediavo's allegedly improper coding practices take place; (c) Mediavo's contacts with Florida that relate to the alleged misappropriation and misuse of the purported trade secrets or allegedly improper coding practices (including any relationships prior to the filing of the Complaint with individuals or entities in Florida); (d) Mediavo's contacts with Florida that it does not have with every other state in the Union (including any direct or indirect financial interests in subsidiaries or other entities in Florida); (e) Defendants' answers to interrogatories and the documents produced by Defendants in response to requests for production; and (f) Hoggatt's declarations dated November 30, 2018 and August 25, 2019. As for the length of the deposition, Plaintiffs will have up to 240 minutes, Defendants will have up to 120 minutes, and the clock runs except for mutually agreed breaks. The parties shall be reasonable and cooperative in affording each other the opportunity for follow-up questions within the time allotted.

## V. The Confidentiality Agreement

Another source of unnecessary delay in this case is the parties' failure to arrive at a mutually agreeable confidentiality agreement. As was previously provided in the Case Management and Scheduling Order:

> The parties may reach their own agreement regarding the designation of materials as "confidential." There is no need for the Court to endorse the confidentiality agreement. The Court discourages unnecessary stipulated motions for protective order. The Court will enforce stipulated and signed confidentiality agreements.

(Doc. 28, § I.F.). Nevertheless, Plaintiffs previously moved the Court to adopt a confidentiality agreement (Doc. 37), even though Defendants opposed its terms (Doc. 42). Given the absence of agreement, the Court denied the motion. (Doc. 48). Plaintiffs objected (Doc. 51), but because the order declining to adopt a contested confidentiality agreement was not clearly erroneous or contrary to law, the objection was overruled. (Doc. 55). And as they have done with their attempt to compel a response to Interrogatory No. 18 (discussed above), Plaintiffs now take a third run at attempting to secure a contested confidentiality agreement.

Notably, this issue should have been put to rest long ago. On November 19, 2018, the parties received the Court's Track Two Notice, which directed the parties to conduct their discovery-plan meeting within thirty days "after service of the complaint upon any defendant, or the first appearance of any defendant." (Doc. 8, pp. 1-2). The parties were further directed to file their Case Management Report, using the form attached to the Track Two Notice, within 14 days after the meeting. (Doc. 8, p. 2). This procedure contemplates that the parties will diligently prepare for the meeting, consider and discuss proposed terms of any confidentiality agreement at the meeting, and exchange drafts of any proposed confidentiality agreement prior to and immediately after the meeting as necessary. In fact, the form report provided to the parties calls for them to memorialize their agreements concerning any confidentiality agreements when they file their Case Management Report. (Doc. 8, p.9).

The parties conducted their discovery-plan meeting via an in-person conference at the offices of defense counsel in Miami on December 12, 2018. (Doc. 22, p.3). In the Case Management Report jointly filed by the parties fourteen days later, they informed

the Court: "The parties will execute a confidentiality agreement." (Doc. 22, p.9). Ten months later, it appears the parties have yet to do so. And the impediment is nothing short of baffling.

The hang up appears to be Defendants' belief that they should be able to designate material as "protected" and thereby prevent Plaintiffs from filing any such material with the Court or force them to move the Court for permission to do so – even if the parties previously attempted to file the material under seal and the Court did not allow it. But an order denying a motion to seal would necessarily constitute a finding that the material is not worthy of such protection because it does not pose a risk of disclosing a trade secret or other valuable and sensitive proprietary information.

Worse yet, Defendants had previously agreed to a provision concerning this issue as far back as April 1, 2019, and defense counsel even went on to concede on July 24, 2019: "I continue to believe there is no reason to account for what happens if the court denies a motion to seal." (Doc. 59-5, p.7). While the Court may not have a complete record of the months of back-and-forth between the parties, and it does not invite or suggest any further submissions or motions about the parties' attempts – prior to the entry of this Order – to reach a confidentiality agreement, it does seem worthwhile to remind **<u>Defendants and their counsel</u>** of their obligations to comply with both the letter and spirit of Local Rule 2.04(h): "Attorneys and litigants should conduct themselves with civility and in a spirit of cooperation in order to reduce unnecessary cost and delay."

The Court once again declines to judicially impose a confidentiality agreement upon the parties. But to facilitate the upcoming deposition of Hoggatt, Defendants shall within five days of the entry of this Order produce any and all documents they might still

be withholding pending the execution of a confidentiality agreement. Until a confidentiality agreement is reached, Plaintiffs will refrain from filing "protected" material with the Court and shall handle all such documents as if every other provision of the draft agreement (Doc. 59-6) – that is, all but paragraph 12.4 – are stipulated obligations of the parties. Accordingly, and as set forth above, Plaintiffs' motion to compel is granted in part and denied in part.

**VI.     Sanctions**

The pending motions resolved by this Order contain countervailing requests for sanctions. But neither side is blameless, and both are at fault; both for the unnecessary delay in the progress of this matter and the needless burdens placed on the parties and the Court to get this case back on track. The requests for sanctions are denied.

Accordingly, it is hereby **ORDERED**:

1. Defendants' Motion to Quash or, in the Alternative, for Entry of a Protective Order as to Plaintiffs' Third-Party Subpoenas (Doc. 57) is **GRANTED**.

2. Plaintiffs' Motion for Reconsideration of Magistrate's Order Denying in Part Their Motion to Compel Jurisdictional Discovery (Doc. 58) is **DENIED**.

3. Plaintiffs' Emergency Motion to Compel Deposition Testimony of Jeremy Matthew Hoggatt in His Personal Capacity and as Mediavo, Inc.'s Corporate Representative and Entry of Protective Order (Doc. 59) is **GRANTED in part and DENIED in part**.

    a. Defendants shall **IMMEDIATELY** provide no less than six dates that occur on or before November 22, 2019 for the deposition of Hoggatt in both his personal capacity and as the corporate representative of

Mediavo. Plaintiffs shall accept one of the dates offered. Plaintiffs shall have up to 240 minutes and Defendants will have up to 120 minutes. Unless the parties otherwise agree to a different location, the deposition will take place in Kansas City, Missouri.

b. As discussed more fully above, the scope of the deposition shall be limited to:

   i. When and where Hoggatt allegedly acquired the purported trade secrets and transferred them to Mediavo;

   ii. Where did activities related to Mediavo's allegedly improper coding practices take place;

   iii. Mediavo's contacts with Florida that relate to the alleged misappropriation and misuse of the purported trade secrets or allegedly improper coding practices;

   iv. Mediavo's contacts with Florida that it does not have with every other state in the United States;

   v. Defendants' answers to interrogatories and the documents produced by Defendants in response to requests for production; and

   vi. Hoggatt's declarations dated November 30, 2018 and August 25, 2019.

c. As set forth more fully above, on or before **October 14, 2019**, Defendants shall produce any and all documents they may have withheld pending the execution of a confidentiality agreement.

4. Plaintiffs' Motion for Leave to File a Supplemental Declaration to Clarify Defendants' Misrepresentations in their Opposition to Plaintiffs' Motion to Compel Depositions (Doc. 64) is **DENIED AS MOOT**.

**DONE** and **ORDERED** in Fort Myers, Florida on October 8, 2019.

_____
NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties