UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SPIGOT, INC., POLARITY
TECHNOLOGIES LTD., and
EIGHTPOINT TECHNOLOGIES
LTD.,

      Plaintiffs,

v.                  Case No:  2:18-cv-764-FtM-29NPM

JEREMY MATTHEW HOGGATT and
MEDIAVO, INC.,

      Defendants.

_____

### OPINION AND ORDER

This matter comes before the Court on defendants' Motion to Dismiss For Lack of Personal Jurisdiction, For Improper Venue and, Alternatively, for Failure to State a Claim Upon Which Relief Can Be Granted (Doc. #89), filed on January 31, 2020, following a period of jurisdictional discovery. Plaintiffs filed an Opposition (Doc. #90) on February 14, 2020.

On January 17, 2020, plaintiffs filed the First Amended Complaint (Doc. #88), which asserts two claims: (1) violation of the Florida Uniform Trade Secrets Act ("FUTSA"), §§ 688.001-.009, Fla. Stat. (Count One); and (2) violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 (Count Two). Defendants argue that dismissal is proper because (1) the Court lacks personal jurisdiction over either defendant, (2) venue is improper in

Florida, and (3) plaintiffs fail to state a claim against either defendant. (Doc. #89, pp. 13-22.) Plaintiffs respond that each of these arguments is without merit. (Doc. #90, pp. 17-20.)[1] For the reasons set forth below, with one exception the motion is denied.

## I.

According to the First Amended Complaint (Doc. #88):

Plaintiff Spigot, Inc. (Spigot) is a Nevada corporation with its principal office located in Fort Myers, Florida; plaintiff Polarity Technologies Ltd. is a Cyprus company with its principal place of business in Cyprus; and plaintiff Eightpoint Technologies Ltd. is a Cayman Islands company with its principal place of business in the Cayman Islands (Id. ¶¶ 1-3) (collectively plaintiffs.) Defendant Mediavo, Inc. (Mediavo) is a Delaware corporation with its principal place of business in Kansas City, Missouri, and defendant Jeremy Hoggatt (Hoggatt) is a resident of Missouri and the founder and Chief Executive Officer of Mediavo (Id. ¶¶ 4-5) (collectively defendants.)

This action arises from trade secrets and business strategies developed by a non-party formerly known as Adknowledge, Inc. (Adknowledge) and purchased by plaintiffs in September, 2016. (Id.

---

[1] The cited page numbers in the motion and response refer to the Court's computer-generated page number at the top of the document, not the page number on the bottom of the document.

p. 1.)  Adknowledge was formed in 2002 and has become one of the world's largest privately held digital advertising networks and software development companies. (Id. ¶ 13.)  Adknowledge operated various interconnected Business Channels (business units) through which proprietary information was shared.  (Id.)  Two of the Business Channels are relevant to this case:  the Apps Channel, which focused on creating, designing, and developing proprietary software and web browser applications and extensions for desktop computers and mobile phones; and the Email Channel, which focused on monetizing emails and email list management.  (Id. ¶¶ 13-17.)

Adknowledge's Apps Channel developed certain trade secrets, including a Life Time Value ("LTV") model, an LTV power curve, an LTV multiplier, proprietary desktop extension products, confidential business strategies, confidential advertising and marketing strategies, and confidential affiliate business methods. (Id. p. 2, ¶¶ 21-29.)  Using these trade secrets, Adknowledge monetized nontraditional segments and verticals and developed a niche customer list of affiliates and publishers.  (Id. ¶¶ 30, 31.)  Adknowledge took great measures to protect these trade secrets from disclosure, including confidentiality and non-disclosure agreements, internal guidelines, and unique user names and passwords.  (Id. ¶ 33.)

Hoggatt joined Adknowledge as Director of Engineering in 2009, was promoted to Vice President in February, 2011, and was

again promoted in November, 2011 to General Manager in charge of the Email Channel.  (Id. ¶¶ 18-20, 42.)  Hoggatt was privy to and accessed the Adknowledge trade secrets by virtue of the receipt of certain types of emails and attendance at certain types of meetings.  (Id. p. 2, ¶¶ 43-45, 49-50.)

On September 21, 2016, plaintiffs executed an Asset Purchase Agreement in which they purchased certain assets from Adknowledge and its subsidiary, including the Apps Channel Trade Secrets.  (Id. p. 2, ¶¶ 32, 35-37.)  Included in the Asset Purchase Agreement was a non-competition clause which precluded use of the trade secrets being acquired by plaintiffs.  (Id. ¶¶ 39-40.)  After the purchase, all of the Apps Channel Adknowledge employees left Adknowledge and joined Spigot, continuing to work on the purchased assets.  (Id. ¶ 38.)  Hoggatt was bound by the non-compete provision, but did not join Spigot as an employee. (Id. ¶ 38, 41.)

In October, 2017, Hoggatt left Adknowledge to form Mediavo, a digital marketing company that directly competes with plaintiffs by distributing desktop extensions to internet users.  (Id. ¶¶ 42, 51, 54.)  Prior to leaving Adknowledge, Hoggatt is alleged to have "aggregated" and "improperly collected" the trade secrets, confidential strategies and customer lists at issue, and now he and Mediavo are using these items to the detriment of plaintiffs. (Id. ¶¶ 60-66, 73, 80-83, 92-94.)

4

**II.**

Typically, the Court would address the personal jurisdiction issue first, since "[a] court without personal jurisdiction is powerless to take further action." Posner v. Essex Ins. Co., Ltd., 178 F.3d 1209, 1214 n.6 (11th Cir. 1999).  Plaintiffs, however, have asserted personal jurisdiction over defendants based in part on operating a business in Florida and on "tortious acts" defendants allegedly committed within Florida.  (Doc. #88, ¶¶ 6-7.)  A determination that the First Amended Complaint fails to state a claim, as defendants argue, would affect personal jurisdiction. PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V., 598 F.3d 802, 808 (11th Cir. 2010) ("In Florida, before a court addresses the question of whether specific jurisdiction exists under the long-arm statute, the court must determine 'whether the allegations of the complaint state a cause of action.'" (quoting Wendt v. Horowitz, 822 So. 2d 1252, 1260 (Fla. 2002)). The Court therefore begins with defendants' Rule 12(b)(6) argument.

**A. Motion to Dismiss Legal Standards**

Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)

(citation omitted).  To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level."  Id. at 555l; see also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010).  This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth," Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.  "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (citations omitted).  On the other hand, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.  Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume

their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679.

## B. Elements of Florida and Federal Trade Secret Statutes

Count One of the First Amended Complaint alleges defendants violated the Florida Uniform Trade Secrets Act ("FUTSA"), §§ 688.001-.009, Fla. Stat.  Generally, the FUTSA provides that "a complainant is entitled to recover damages for misappropriation" of a trade secret.  § 688.004(1), Fla. Stat.  "Misappropriation" is defined by the FUTSA as certain acquisitions, disclosures, or uses of a trade secret:

> "Misappropriation" means:
>
> (a) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
>
> (b) Disclosure or use of a trade secret of another without express or implied consent by a person who:
>
> 1. Used improper means to acquire knowledge of the trade secret; or
>
> 2. At the time of disclosure or use, knew or had reason to know that her or his knowledge of the trade secret was:
>
> a. Derived from or through a person who had utilized improper means to acquire it;
>
> b. Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
>
> c. Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

> 3. Before a material change of her or his
> position, knew or had reason to know that it
> was a trade secret and that knowledge of it
> had been acquired by accident or mistake.

§ 688.002(2), Fla. Stat.  "[I]mproper means" is defined by the

FUTSA as:

> "Improper means" includes theft, bribery,
> misrepresentation, breach or inducement of a
> breach of a duty to maintain secrecy, or
> espionage through electronic or other means.

Id. § 688.002(1).  Finally, "[t]rade secret" is defined in the

FUTSA as certain types of information:

> "Trade secret" means information, including a
> formula, pattern, compilation, program,
> device, method, technique, or process that:
>
> (a) Derives independent economic value, actual
> or potential, from not being generally known
> to, and not being readily ascertainable by
> proper means by, other persons who can obtain
> economic value from its disclosure or use; and
>
> (b) Is the subject of efforts that are
> reasonable under the circumstances to maintain
> its secrecy.

Id. § 688.002(4).

Count Two of the First Amended Complaint alleges defendants

violated the Defend Trade Secrets Act ("DTSA"), which became

effective May 11, 2016.  18 U.S.C. § 1836.  Under the DTSA, "[a]n

owner of a trade secret that is misappropriated may bring a civil

action under this subsection if the trade secret is related to a

product or service used in, or intended for use in, interstate or

foreign commerce." Id. § 1836(b)(1).  A "trade secret" is defined by the DTSA as:

> [T]he term "trade secret" means all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—
>
> (A) the owner thereof has taken reasonable measures to keep such information secret; and
>
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information; . . . .

18 U.S.C. § 1839(3).  "Misappropriation" is defined as:

> [T]he term "misappropriation" means-- (A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (B) disclosure or use of a trade secret of another without express or implied consent by a person who-- (i) used improper means to acquire knowledge of the trade secret; (ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was--(I) derived from or through a person who had used improper means to acquire the trade secret; (II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or (III) derived from or through a person who owed a duty to the person seeking relief to maintain

> the secrecy of the trade secret or limit the
> use of the trade secret; or (iii) before a
> material change of the position of the person,
> knew or had reason to know that-- (I) the trade
> secret was a trade secret; and (II) knowledge
> of the trade secret had been acquired by
> accident or mistake; . . . .

Id. § 1839(5).  Finally, "improper means" is defined by the DTSA

as

> [T]he term 'improper means'--  (A) includes
> theft, bribery, misrepresentation, breach or
> inducement of a breach of a duty to maintain
> secrecy, or espionage through electronic or
> other means; and (B) does not include reverse
> engineering, independent derivation, or any
> other lawful means of acquisition; . . . .

Id. § 1839(6).

## C. Defendants' Arguments for Dismissal

Defendants argue that (1) Count Two should be dismissed to the extent any misappropriation is alleged to have occurred prior to May 11, 2016, the effective date of the DTSA; (2) the information at issue is not a "trade secret" within the meanings of either the federal or Florida statute; and (3) the First Amended Complaint alleges only access to trade secrets, as opposed to wrongful acquisition of trade secrets.  (Doc. #89, pp. 18-22.) The Court addresses each in turn.

### (1)  Conduct Pre-Dating DTSA

The DTSA was enacted on May 11, 2016, and applies to "any misappropriation of a trade secret . . . for which any act occurs on or after the date of the enactment."  Defend Trade Secrets Act

10

of 2016, Pub. L. No. 114-153, § 2(e), 130 Stat. 376, 381-83 (2016).

Defendants argue that:

> [t]he Complaint depends on allegations that Defendant Hoggatt acquired the Subject Information during two meetings that took place in Florida. The first of those meetings took place in October 2015. The second occurred in April 2016. If Hoggatt indeed acquired Subject Information during these meetings, he did so prior to enactment of the DTSA. So the DTSA does not apply to his alleged acquisition.

(Doc. #89, p. 19 (citations omitted)).

Defendants rely on Hoggatt's deposition testimony to establish the two Florida meetings, (Doc. #89, p. 19; Doc. #89-3, pp. 41, 43), but consideration of such evidence is beyond the proper scope of a Rule 12(b)(6) motion.  Instead, defendants may only rely upon the allegations in the First Amended Complaint.  "A court's review on a motion to dismiss is 'limited to the four corners of the complaint.'"  Wilchombe v. TeeVee Toons, Inc., 555 F.3d 949, 959 (11th Cir. 2009) (citation omitted)); see also Stanley v. Life Ins. Co. of N. Am., 426 F. Supp. 2d 1275, 1278 (M.D. Fla. 2006) ("If a party wants to assert arguments and issues that are not within the four corners of the complaint, then that party may file a Motion for Summary Judgment.").  The allegations in the First Amended Complaint do not mention, and are not limited to, the two meetings relied upon by defendants in their motion to dismiss.

It is clear, however, that plaintiffs cannot have a cause of action under the DTSA for conduct occurring before its effective

date (May 11, 2016).  This is so both because there was no such federal cause of action before that date, and because plaintiffs had no interest in the trade secrets, and therefore no standing to assert a cause of action, until the September 21, 2016 Asset Purchase Agreement.

The Supreme Court has established that the "irreducible constitutional minimum" of standing consists of three elements: the plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.  Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016) (citations omitted). Plaintiffs, as the parties invoking federal jurisdiction, bear the burden of establishing these elements, and at the pleading stage, plaintiffs must "clearly . . . allege facts demonstrating" each element.  Id. (citations omitted).  "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  Id. at 1548 (citation omitted.) It is undisputed in this case that plaintiffs had no interest in the trade secrets developed by Adknowledge until the Asset Purchase Agreement was signed on September 21, 2016.

The Court does not read Count Two as asserting DTSA misappropriation based on misconduct occurring before September

21, 2016, or before the May 11, 2016 enactment of the DTSA, even though Hoggatt is alleged to have had access to the trade secrets before those dates.   Plaintiffs, however, seem to argue to the contrary, asserting that "to the extent Defendants engaged in wrongful acts prior to the enactment of DTSA, Plaintiffs may still recover under the statute as misappropriation post-dates DTSA." (Doc. #90, p. 21.)[2]   This is incorrect.   Plaintiffs may state a cause of action only for an acquisition, disclosure, or use which occurs after May 11, 2016, although evidence of acts before that date may be relevant.   See <u>Fin. Info. Techs., Inc. v. iControl Sys., USA, LLC</u>, 2018 WL 3391379, *4 (M.D. Fla. June 12, 2018) ("Even if a trade secret was acquired or developed prior to May 11, 2016, a plaintiff may recover where disclosure to the public occurred after that date.").   However, here plaintiffs' earliest date for a cause of action is September 21, 2016, when they are alleged to have acquired an interest in the trade secrets.

Plaintiffs state in their Opposition to the motion that the misappropriation in this case is defendants **use** of their purchased proprietary information to create a competing business (Doc. #90, pp. 17-18), and cite the allegation in the First Amended Complaint that Hoggatt "wrongfully used such information to directly compete

---

[2] This apparently only refers to Hoggatt, since Mediavo did not exist until October 19, 2017.

with Plaintiffs by forming Mediavo and using the Trade Secrets to target specific users and verticals." (Id. p. 18, quoting Doc. #88, ¶ 81.) As plaintiffs further stated, Hoggatt left Adknowledge in October, 2017, "and on that date he unlawfully absconded with Plaintiffs' Trade Secrets, thereafter forming Mediavo to use unlawfully use [sic] and deploy the trade secrets." (Doc. #90, pp. 20-21.) In multiple places the First Amended Complaint alleges Hoggatt "aggregated" the trade secrets, quit employment at Adknowledge, and then used the trade secrets in furtherance of the new business. (Doc. #88, p. 2, ¶¶ 9, 42, 48, 58-59, 61, 66, 69-71, 93-94.) Mediavo was formed on October 19, 2017. (Doc. #90-10, p. 73.)

Viewing the allegations in the First Amended Complaint in the light most favorable to plaintiffs, the Court finds that Count Two sufficiently alleges misappropriations that occurred after the enactment of the DTSA and after plaintiffs acquired an interest in the trade secrets. To the extent plaintiffs believe the First Amended Complaint alleges a cause of action based on defendants' conduct occurring prior to September 21, 2016, such portions of Count Two are dismissed without prejudice.

### (2) "Trade Secret"

Defendants argue that the subject information is not a "trade secret" because other than the LTV model, "none of this information is secret" and "Plaintiffs made no effort to keep this information

secret." (Doc. #89, p. 20.) Plaintiffs respond that the First Amended Complaint sufficiently alleges both that the information is secret and that they made reasonable efforts to keep it secret. (Doc. #90, pp. 18-20.)

Generally, both the federal and Florida statutes limit "trade secrets" to information that is "secret" in the sense that it is not generally known and cannot be readily ascertained by proper means.[3] Additionally, both statutes require that reasonable efforts or measures be taken to keep the information secret.[4]

---

[3] Under the FUTSA, "trade secret" means information, that "[d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use." § 688.002(4)(a), Fla. Stat.

Similarly, under the DTSA a "trade secret" means "all forms and types of financial, business, scientific, technical, economic, or engineering information, . . . if . . . (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3).

[4] Under the FUTSA, to be a trade secret the information must also be "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." § 688.002(4)(b), Fla. Stat.

Similarly, under the DTSA a "trade secret" means "all forms and types of financial, business, scientific, technical, economic, or engineering information, . . . if--(A) the owner thereof has taken reasonable measures to keep such information secret." 18 U.S.C. § 1839(3).

Failure to sufficiently plead either element would require dismissal of the cause of action.

The allegations in the First Amended Complaint sufficiently alleged that the information asserted to be "trade secrets" was not generally known and cannot be readily ascertained by proper means. See (Doc. #88, p. 2, ¶¶ 21-33.) While defendants dispute the accuracy of these allegations, these factual disputes are for another day. "Whether information constitutes a 'trade secret' is a question of fact," Penalty Kick Mgmt. Ltd. v. Coca Cola Co., 318 F.3d 1284, 1291 (11th Cir. 2003), and "a motion to dismiss is not the vehicle to resolve questions of fact," Becker v. City of Fort Myers, 2019 WL 2929326, *2 n.4 (M.D. Fla. July 8, 2019).

Additionally, the First Amended Complaint sufficiently alleges that plaintiffs, as well as Adknowledge, took reasonable steps to protect the information. The First Amended Complaint alleges that:

- When Adknowledge developed the trade secrets, it "took great measures to protect" them by (1) requiring all employees to sign confidentiality and nondisclosure agreements, (2) developing guidelines and policies to prevent the dissemination of the trade secrets outside of Adknowledge, and (3) requiring unique user names and passwords to access the information.

- As part of the Asset Purchase Agreement for the trade secrets, all the Apps Channel employees left Adknowledge to join Spigot

and continue working on the purchased assets.

- Being aware the trade secrets were "extremely valuable," plaintiffs insisted the Asset Purchase Agreement contain a non-compete clause with Adknowledge to protect plaintiffs' investment and "prevent seller restricted parties from using" the trade secrets.

(Doc. #88, ¶¶ 33, 38-40.) Additionally, plaintiffs specifically allege that they took all reasonable steps to protect the trade secrets from public disclosure, including non-disclosure agreements and password protection. (Id. ¶¶ 76, 88.) Again, while defendants disagree with the accuracy of these allegations, resolution of such disputes is not appropriate at the motion to dismiss stage. Treco Int'l S.A. v. Kromka, 706 F. Supp. 2d 1283, 1287 (S.D. Fla. 2010) ("[W]hether a party has taken reasonable steps under the circumstances to preserve its trade secrets is a factual inquiry that cannot be resolved on a motion to dismiss.")

Viewing the allegations in plaintiffs' favor, the Court finds the First Amended Complaint sufficiently alleges the information was secret and that reasonable efforts or measures were taken to protect the information.

### (3) "Wrongfully Acquired"

Finally, defendants argue plaintiffs fail to state claims for misappropriation because the First Amended Complaint does not

allege the trade secrets were wrongfully acquired.  (Doc. #89, p. 21.)  The Court disagrees.

Under both the federal and Florida statutes, "misappropriation" is defined to include "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means."  18 U.S.C § 1839(5)(A); § 688.002(2)(a), Fla. Stat.  Both statutes define "improper means" to include theft and breach of a duty to maintain secrecy.  18 U.S.C § 1839(6)(A); § 688.002(1), Fla. Stat.

Here, the First Amended Complaint alleges Hoggatt "aggregated" and then took the trade secrets after plaintiffs had purchased them, and used the trade secrets at Mediavo to directly compete with plaintiffs.  While defendants are correct that the First Amended Complaint does not specifically use the word "theft" (Doc. #89, p. 21), the reasonable inference is clear.  Iqbal, 556 U.S. at 678.  The Court finds these allegations of misappropriation are sufficient.

Additionally, the First Amended Complaint alleges that Hoggatt was bound by the non-disclosure clause in the Asset Purchase Agreement (Doc. #88, ¶ 41), which created a duty which was allegedly breached.  Both the federal and Florida statutes define "misappropriation" to include certain disclosures or uses of a trade secret by a qualifying person.  To be liable for such disclosure or use of a trade secret, the putative defendant must:

- Have "[u]sed improper means to acquire knowledge of the trade secret;" or

- "At the time of disclosure or use, knew or had reason to know that her or his knowledge of the trade secret was:

  - a. Derived from or through a person who had utilized improper means to acquire it;

  - b. Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

  - c. Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use;" or

- "Before a material change of her or his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake."

§ 688.002(2), Fla. Stat.  The DTSA contains a similar provision. 18 U.S.C. § 1839(5).  The First Amended Complaint sufficiently alleges defendants were such qualifying persons.  E.g., (Doc. #88, ¶¶ 42-49, 60-61, 80-82, 92-94.)

   Accordingly, the Court finds that the First Amended Complaint plausibly sets forth claims for violation of the FUTSA and the DTSA.  To the extent plaintiffs believe the First Amended Complaint alleges a cause of action based in part on conduct occurring prior to September 21, 2016, such portions of the claim are dismissed

without prejudice.    The Rule 12(b)(6) motion to dismiss is otherwise denied.

## III.

Having found the First Amended Complaint contains sufficient allegations for both Counts One and Two to state causes of action, the Court will turn to defendants' personal jurisdiction arguments.

### A. Personal Jurisdiction Legal Standards

"Personal jurisdiction . . . is 'an essential element of the jurisdiction of a district . . . court,' without which the court is 'powerless to proceed to an adjudication.'" Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 584 (1999) (quoting Emp'rs Reinsurance Corp. v. Bryant, 299 U.S. 374, 382 (1937)); see also Posner, 178 F.3d at 1214 n.6.   The standard to be applied to determine personal jurisdiction may depend, however, on the asserted basis for subject matter jurisdiction.

Subject matter jurisdiction in this case is now premised upon both complete diversity of citizenship[5] and federal question jurisdiction.   Because the DTSA does not provide for nationwide service of process, the court determines personal jurisdiction

---

[5] While the First Amended Complaint does not properly allege the citizenship of Hoggatt, alleging only residency instead of domicile, the Notice of Removal properly alleges his citizenship in Missouri.  (Doc. #1, ¶ 14.)

using the state long-arm statute and the Due Process Clause.  <u>Snow</u>

<u>v. DirecTV, Inc.</u>, 450 F.3d 1314, 1317 (11th Cir. 2006) (citing

<u>Cable/Home Commc'n Corp. v. Network Prods., Inc.</u>, 902 F.2d 829,

855 (11th Cir. 1990)).  Under such a statute

> [a] federal district court in Florida may
> exercise personal jurisdiction over a
> nonresident defendant to the same extent that
> a Florida court may, so long as the exercise
> is consistent with federal due process
> requirements. If both Florida law and the
> United States Constitution permit, the federal
> district court may exercise jurisdiction over
> the nonresident defendant.

<u>Licciardello v. Lovelady</u>, 544 F.3d 1280, 1283 (11th Cir. 2008)

(citations omitted).  The personal jurisdiction standard in such

a federal question case thus becomes the same as that applied in

diversity jurisdiction cases.

> "A federal court sitting in diversity
> undertakes a two-step inquiry in determining
> whether personal jurisdiction exists: the
> exercise of jurisdiction must (1) be
> appropriate under the state long-arm statute
> and (2) not violate the Due Process Clause of
> the Fourteenth Amendment to the United States
> Constitution."

<u>Carmouche v. Tamborlee Mgmt., Inc.</u>, 789 F.3d 1201, 1203 (11th Cir.

2015) (quoting <u>United Techs. Corp. v. Mazer</u>, 556 F.3d 1260, 1274

(11th Cir. 2009)).

Procedurally, to establish personal jurisdiction over a

nonresident defendant, the plaintiff "bears the initial burden of

alleging in the complaint sufficient facts to make out a prima

facie case of jurisdiction." <u>Louis Vuitton Malletier, S.A. v.</u>
<u>Mosseri</u>, 736 F.3d 1339, 1350 (11th Cir. 2013) (quotation omitted).
The plaintiff must present "enough evidence to withstand a motion
for directed verdict." <u>Stubbs v. Wyndham Nassau Resort & Crystal</u>
<u>Palace Casino</u>, 447 F.3d 1357, 1360 (11th Cir. 2006) (citation and
marks omitted). A directed verdict, now referred to as a judgment
as a matter of law, is appropriate where "viewing the evidence in
its entirety and drawing all reasonable inferences in favor of the
nonmoving party, . . . the nonmoving party failed to make a showing
on an essential element of his case with respect to which he had
the burden of proof." <u>Smith v. United States</u>, 894 F.2d 1549, 1552
(11th Cir. 1990) (citations omitted).

Despite a prima facie showing in a complaint, the defendant
may challenge personal jurisdiction by submitting affidavits,
depositions, or other evidence.

> When a defendant challenges personal
> jurisdiction "by submitting affidavit
> evidence in support of its position, the
> burden traditionally shifts back to the
> plaintiff to produce evidence supporting
> jurisdiction." <u>Madara v. Hall</u>, 916 F.2d 1510,
> 1514 (11th Cir. 1990) (internal quotation
> marks omitted).

<u>Mosseri</u>, 736 F.3d at 1350. "Where the plaintiff's complaint and
supporting evidence conflict with the defendant's affidavits, the
court must construe all reasonable inferences in favor of the
plaintiff." <u>Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.</u>, 288

F.3d 1264, 1269 (11th Cir. 2002). "If such inferences are sufficient to defeat a motion for judgment as a matter of law, the court must rule for the plaintiff, finding that jurisdiction exists." PVC Windoors, Inc., 598 F.3d at 810.

Unlike a Florida state court[6], a federal district court is not required to hold an evidentiary hearing even in the face of conflicting evidence as to the facts supporting or challenging personal jurisdiction. Mut. Serv. Ins. Co. v. Frit Indus., Inc., 358 F.3d 1312, 1319 n.6 (11th Cir. 2004). "If, however, the court holds an evidentiary hearing to adjudicate the issue of whether the court has jurisdiction over the defendant's person, the court determines the credibility of witness testimony, weighs the evidence, and finds the relevant jurisdictional facts." PVC Windoors, Inc., 598 F.3d at 810.

**B. Application of Standards**

**(1) Prima Facie Allegations in First Amended Complaint**

Defendants do not appear to assert that plaintiffs have failed to meet their initial burden of alleging a prima facie case for personal jurisdiction in the First Amended Complaint. Rather, defendants argue that the allegations purporting to establish

---

[6] Dickinson Wright, PLLC v. Third Reef Holdings, LLC, 244 So. 3d 303, 306 (Fla. 4th DCA 2018) ("When the affidavits cannot be harmonized, the trial court must hold a limited evidentiary hearing to determine jurisdiction.")

personal jurisdiction are "false." (Doc. #89, p. 1.) In any event, the Court is satisfied that the allegations in the First Amendment Complaint relating to personal jurisdiction present enough evidence to withstand a motion for judgment as a matter of law. Therefore, plaintiffs have satisfied their prima facie burden.

### (2)   Florida Long-Arm Statute

Defendants assert that plaintiffs have not factually established personal jurisdiction over either defendant, submitting affidavits and evidence in support of their position. The burden therefore shifts back to plaintiffs to factually establish personal jurisdiction over each defendant.

The First Amended Complaint alleges three bases on which the Court has personal jurisdiction over defendants: (1) both defendants "operated, conducted, engaged in and / or carried on a business or business venture in the State of Florida"; (2) both defendants "committed tortious acts within Florida, including but not limited to misappropriation of trade secrets and other proprietary, confidential information of the Plaintiffs"; and (3) both defendants "had continuous and systematic contacts with Florida by engaging in numerous activities that have had an effect in this State." (Doc. #88, ¶¶ 6, 7, 12.) Plaintiffs have abandoned the third ground for personal jurisdiction, which was premised on section 48.193(2), Florida Statutes, by failing to pursue it in

their response in opposition to the motion to dismiss.  (Doc. #90, pp. 9-16.)

While the First Amended Complaint does not identify the Florida statutes upon which it relies, plaintiffs are clearly asserting specific jurisdiction under the first two provisions of section 48.193(1)(a), Florida Statutes.  Under section 48.193(1), a defendant is subject to jurisdiction in Florida for causes of action arising from one or more of nine enumerated Florida-connected acts.  The pertinent portions of the statute provide:

> (1)(a) A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself . . . to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
>
> > 1. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
> >
> > 2. Committing a tortious act within this state.

§ 48.193(1)(a)(1)-(2), Fla. Stat.  These provisions

> expressly require allegations *both*: (i) that the defendant does one of the enumerated acts within Florida, *and* (ii) that the plaintiff's cause of action "arise from" one of the enumerated acts occurring in Florida. <u>See</u> § 48.193(1)(a), Fla. Stat. (2015). These dual requirements—that the defendant's conduct occur in Florida and that the plaintiff's cause of action arises from such Florida activity—are known as the statute's connexity requirement.

<u>Banco de los Trabajadores v. Cortez Moreno</u>, 237 So. 3d 1127, 1135

(Fla. 3d DCA 2018) (citations omitted.)   The Court is required to apply this statute "as would the Florida Supreme Court," and to construe it strictly.   Prunty v. Arnold & Itkin LLP, 753 Fed. App'x 731, 734 (11th Cir. 2018) (citations omitted).

### (a)   Operating a Business

### (1)   General Principles

Florida asserts personal jurisdiction over a defendant under this portion of the statute when three elements are satisfied: (1) there is a cause of action, (2) arising from, (3) "[o]perating, conducting, engaging in, or carrying on a business or business venture in [Florida] or having an office or agency in [Florida]." § 48.193(1)(a)(1), Fla. Stat.

As the Court has determined, plaintiffs have plausibly asserted causes of action against both defendants for violation of the FUTSA and the DTSA.   Importantly, those causes of action did not exist in this case until, at the earliest, September 21, 2016, when the Asset Purchase Agreement was signed.   Until then, plaintiffs had no interest in the trade secrets created and possessed by Adknowledge, and therefore no standing to assert causes of action for misappropriation of such trade secrets. Spokeo, Inc., 136 S. Ct. at 1547-48.

Plaintiffs must also show that the causes of action "arise from" the business conducted in Florida.   "Although the term 'arising from' does not mean proximately caused by, it does require

direct affiliation, nexus, or substantial connection to exist between the basis for the plaintiffs' cause of action and the defendants' business activity in the state." Gadea v. Star Cruises, Ltd., 949 So. 2d 1143, 1149-50 (Fla. 3d DCA 2007) (citations omitted).

Finally, plaintiffs must show that, as relevant to this case, the causes of action arose from "[o]perating, conducting, engaging in, or carrying on a business or business venture in" Florida. "[T]he activities of the defendant[s] must be considered collectively and show a general course of business activity in the state for pecuniary benefit." Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A., 421 F.3d 1162, 1167 (11th Cir. 2005). That requirement can be satisfied either by (1) "'doing a series of similar acts for the purpose of thereby realizing pecuniary benefit,'" or (2) "'doing a single act for such purpose with the intention of thereby initiating a series of such acts.'" Wm. E. Strasser Constr. Corp. v. Linn, 97 So. 2d 458, 460 (Fla. 1957) (quoting Restatement (First) of Judgments § 22 (1942) (emphasis omitted)). "Factors to consider in making this determination include: (1) the presence and operation of an office in Florida; (2) the possession and maintenance of a license to do business in Florida; (3) the number of Florida clients served; and (4) the percentage of overall revenue gleaned from Florida clients." Stonepeak Partners, LP v. Tall Tower Capital, LLC, 231 So. 3d 548,

555 (Fla. 2d DCA 2017) (marks and citations omitted). "Moreover, the term 'business venture' is generally applied to one subject matter or undertaking while 'business' is broader in scope denoting a variety of subjects, transactions or undertakings." Ferguson v. Estate of Campana, 47 So. 3d 838, 842 (Fla. 3d DCA 2010) (marks and citations omitted).

Plaintiffs assert that "Defendants conducted business in Florida by targeting business opportunities in this state and deploying desktop extensions to Florida consumers, all of which generate revenue for Defendants." (Doc. #90, p. 11.) Plaintiffs further assert that because Hoggatt testified in deposition that he "had to do years of competitive research" in desktop extensions or apps in order to form Mediavo, and because he formed Mediavo "almost immediately" upon leaving Adknowledge, "his 'market research' by definition had to have taken place while at Adknowledge." (Id. citing Doc. #90-14, p. 172.) Plaintiffs continue:

> The evidence shows that to that end, and in preparation for him absconding with the trade secrets from Adknowledge and of the formation of Mediavo, Hoggatt attended executive and client meetings in Florida, viewed confidential documents containing Plaintiffs' trade secrets in Florida, and stole these trade secrets to form a direct competitor of Plaintiffs. Mediavo then registered to conduct business in Florida under the name HyperConnect Media. Through its d/b/a, Mediavo targeted Florida consumers and deployed

> extensions created using Plaintiffs' trade
> secrets.

(Id. at 11-12.)

### (2)  Application of Principles

First, the Court briefly discusses the facts and factual disputes which are **not** relevant to the personal jurisdiction issue. Any acquisition of or exposure to trade secrets by Hoggatt prior to September 21, 2016 cannot be relevant to the § 48.193(1)(a)(1) inquiry because plaintiffs could not have had a cause of action before that date.  Thus, while the Court accepts plaintiffs' assertions as to the development and maintenance of the trade secrets in Florida, Hoggatt's knowledge of those trade secrets while employed by Adknowledge, Hoggatt's travel to and meetings in Florida while an employee of Adknowledge before September 21, 2016, Hoggatt's management of Adknowledge employees in Florida, and the configuration of the floor plan of the Florida office, these assertions do not help satisfy plaintiffs' burden under section 48.193(1)(a)(1), Florida Statutes.

Between September 21, 2016 and October, 2017, Hoggatt remained an employee of Adknowledge.  Even assuming plaintiffs are correct about Hoggatt's "research" during this time period, there are no factual allegations as to Hoggatt's connection with or conduct in Florida during this time period.

In October, 2017 Hoggatt left his employment with Adknowledge, and according to plaintiffs, "absconded" with their trade secrets. (Doc. #88, p. 14.) Plaintiffs have satisfactorily shown that thereafter:

- On October 19, 2017, Hoggatt formed Mediavo, Inc. as a Delaware corporation. (Doc. #90-10, p. 73.) Hoggatt was listed as the Chairman of Mediavo and its only officer, with a Kansas City, Missouri address. (Id. p. 74.)

- In October, 2017, Hoggatt filed an Application by Foreign Corporation for Authorization to Transact Business in Florida and supporting paperwork. (Id. p. 72-74.) Mediavo's address was listed as "c/o HyperConnect Media" with a Florida address, and Hoggatt was identified as the contact person if further information was needed. (Id. p. 72.) A registered agent was designated in Florida. (Id. p. 73.)

- On February 27, 2018, Hoggatt filed an Application for Delivery of Mail Through Agent with the United States Postal Service for HyperConnect Media mail to be delivered to a UPS Store in Florida. (Doc. #90-11, p. 77-78.)

- Effective April 16, 2018, a Certificate of Authority to do business in Florida was issued by the Florida Department of State to Mediavo, Inc. (Doc. #90-10, pp. 69-70.)

- A confirming letter from the Florida Department of State dated April 18, 2018 was sent to Hoggatt. (Id. p. 69.)

- On April 19, 2018, Mediavo registered HyperConnect Media as a fictitious name with the Florida Department of State (id. at 68), which conducts business in Florida.

- Mediavo has done, and continues to do, business in Florida. Mediavo states that its business is composed of 7% Florida users, which constitutes 6% of Mediavo's overall revenue. (Doc. #89-1, p. 27.)

- Mediavo has entered into at least one contract in which it submitted to the jurisdiction of a Florida court. (Doc. #89-2, p. 34; Doc. #90-12, p. 102.)

- Mediavo operates the website www.geteasymaps.co, which directs users to a "Contact Us" section which identifies HyperConnect Media with a Florida address. (Doc. #90-13, pp. 105-07.)

- Mediavo is deploying extensions in Florida, although defendants have apparently refused to identify the names of the Florida customers. (Doc. #90-14, pp. 147, 149; Doc. #90, p. 7.)

- The domain name for HyperConnect Media is owned by a Wyoming LLC which was set up for Mediavo by its Florida attorney. (Doc. #90-9, p. 63.)

The Court finds that plaintiffs have sufficiently established that defendants are pursuing a cause of action which arises from defendants' conducting a business in Florida.

**(b)  Committing Tortious Act**

Section 48.193(1)(a)(2), Florida Statutes, provides that a person "who personally or through an agent" commits a tortious act within this state "thereby submits himself or herself . . . to the jurisdiction of the courts of this state for any cause of action arising from . . . [c]ommitting a tortious act within this state." "The statute expressly requires that the tort be committed in Florida." Casita, L.P. v. Maplewood Equity Partners L.P., 960 So. 2d 854, 857 (Fla. 3d DCA 2007).  "In analyzing whether tortious conduct has occurred within Florida, courts have looked to whether the nonresident defendant committed a substantial aspect of the alleged tort in Florida." NHB Advisors, Inc. v. Czyzyk, 95 So. 3d 444, 448 (Fla. 4th DCA 2012) (marks and citation omitted); see also Internet Sols. Corp. v. Marshall, 557 F.3d 1293, 1296 (11th Cir. 2009) ("For the purposes of the [long-arm] statute, the defendant does not have to be physically present in Florida for the tortious act to occur within that state."); 3Lions Publ'g, Inc. v. Interactive Media Corp., 389 F. Supp. 3d 1031, 1037 (M.D. Fla. 2019) ("Under the long-arm statute, a nonresident defendant need not have a physical presence in Florida for the Court to assert personal jurisdiction.  Instead, such a nonresident

defendant need only commit a tortious act that causes injury within Florida." (citations omitted)).

The First Amended Complaint alleges defendants misappropriated plaintiffs' trade secrets under the FUTSA and the DTSA, which constitutes a "tortious act" under the long-arm statute. See Bovie Med. Corp. v. Livneh, 2010 WL 5297172, *6 (M.D. Fla. Dec. 20, 2010) ("Misappropriation of trade secrets is an intentional tort in the state of Florida."). Additionally, defendants concede that they have solicited business in Florida, and plaintiffs assert this was through the extensions and strategies that plaintiffs contend constitute trade secrets.

The Court finds that plaintiffs have sufficiently established that defendants are pursuing a cause of action which arises from defendants' committing a tortious act in Florida.

### (3)   Due Process Clause

Having determined Florida's long-arm statute is satisfied, the Court must determine whether the exercise of personal jurisdiction comports with due process. The touchstone of this analysis is whether the defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (citation omitted). The minimum contacts inquiry focuses on "the relationship among the defendant, the forum, and the litigation."

Walden v. Fiore, 571 U.S. 277, 284 (2014) (marks and citation omitted).

"To determine whether the exercise of specific jurisdiction affords due process, we apply a three-part test." Waite v. All Acquisition Corp., 901 F.3d 1307, 1313 (11th Cir. 2018).

> First, we consider whether the plaintiffs have established that their claims "arise out of or relate to" at least one of the defendant's contacts with the forum. Second, we ask whether the plaintiffs have demonstrated that the defendant "purposefully availed" itself of the privilege of conducting activities within the forum state. If the plaintiffs carry their burden of establishing the first two prongs, we next consider whether the defendant has "ma[de] a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice."

Id. (citations omitted).

The Court finds that plaintiffs causes of action against defendants in Florida satisfy due process. As discussed earlier, plaintiffs have established that their claims "arise out of or relate to" at least one of defendants' contacts with the forum. Both the causes of action arise out of defendants' conducting business in Florida and/or committing a tortious act in Florida. Additionally, it is clear that plaintiffs have demonstrated that defendants "purposefully availed" themselves of the privilege of conducting activities within Florida. Indeed, they utilized Florida administrative processes to obtain authority for Mediavo to do so. Finally, defendants have not "ma[de] a compelling case

that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." Defendants both have far more than "slight contact" with Florida, and the conduct in Florida, if true, is the but-for cause of the alleged misappropriation. Hoggatt and Mediavo are alleged to now be using the trade secrets to directly compete with plaintiffs, including Spigot, in Florida. See Licciardello, 544 F.3d at 1288 ("The Constitution is not offended by the exercise of Florida's long-arm statute to effect personal jurisdiction over Lovelady because his intentional conduct in his state of residence was calculated to cause injury to Carman in Florida. Lovelady cannot now claim surprise at being haled into court here." (citations omitted)).

Having reviewed the allegations in the First Amended Complaint as well as the evidence provided by the parties, the Court finds defendants' alleged conducting business in Florida and alleged misappropriation of trade secrets and utilization of them in Florida are sufficient to meet the Constitutional requirements for minimum contacts in this case. The Court will now turn to defendants' fairness argument.

"Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" Burger King Corp v.

*Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *Int'l Shoe*, 326 U.S. at 320).  Such factors include (1) "the burden on the defendant," (2) "the forum State's interest in adjudicating the dispute," (3) "the plaintiff's interest in obtaining convenient and effective relief," (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and (5) "the shared interest of the several States in furthering fundamental substantive social policies."  *Id.* at 477 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).  However, it is a rare situation in which sufficient minimum contacts exist but where the exercise of jurisdiction would be unreasonable.  *Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1352 (11th Cir. 2003).

Defendants argue that fairness dictates dismissal of the case so it may be heard in Missouri, asserting the following:

> There is nothing in these fairness factors that warrants an assertion of jurisdiction in Florida. In fact, the factors prove how *unreasonable* it is to assert jurisdiction over Defendants. It is burdensome to make Defendants travel to Florida to litigate this case— especially given that the balance of witnesses, evidence, and documents related to the claims and possible defenses are located in Missouri and/or the Cayman Islands. Florida has no interest in providing a forum to this dispute—especially when only one Plaintiff (Spigot) is located here and the Subject Information is situated in the Cayman Islands. As to the third factor, while it may be burdensome to make Spigot leave the state to litigate its claims, no other party—including the other Plaintiffs—seems to have any interest in hearing this case in Florida. And the last two factors— interstate efficiency and the shared interests of the

state—certainly support dismissing this case—still in
the pleading stage—so that the dispute can be heard in
Missouri (where jurisdiction is proper).

(Doc. #89, p. 16.)  Having considered defendants' arguments, the
Court is unconvinced.

Defendants have not offered evidence of financial limitations
to show a burden of litigating in Florida, the state of Florida
has an interest in adjudicating a dispute that allegedly causes
injury here in violation of its laws, plaintiffs have chosen
Florida as their preferred forum to obtain relief, and the
judiciary has an interest in resolving a dispute in the forum where
the case has been pending since November 2018.  E.g., Mosseri, 736
F.3d at 1358; Island Stone Int'l Ltd. v. Island Stone India Private
Ltd., 2017 WL 1437464, *8 (M.D. Fla. April 4, 2017); Am. Airlines,
Inc. v. Despegar.com USA, Inc., 2014 WL 11880999, *8 (S.D. Fla.
May 14, 2014).

In conclusion, plaintiffs have demonstrated that the Court
has specific jurisdiction over defendants pursuant to the Florida
long-arm statute and that exercising that jurisdiction comports
with due process.  Accordingly, the Court denies defendants'
request to dismiss the case pursuant to Federal Rule of Civil
Procedure 12(b)(2).

**IV.**

Defendants also assert that proper venue is not in Florida,
but in Missouri.  Venue is defined by federal statute as "the

geographic specification of the proper court or courts for the litigation of a civil action that is within the subject-matter jurisdiction of the district courts in general . . . ." 28 U.S.C. § 1390(a). Pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a claim for improper venue, and the plaintiff bears the burden of demonstrating the venue selected is proper. Watson v. Cmty. Educ. Ctrs., Inc., 2011 WL 3516150, *2 (M.D. Fla. Aug. 11, 2011) (citing Delong Equip. Co. v. Wash. Mills Abrasive Co., 840 F.2d 843, 845 (11th Cir. 1988)).

> The Court must accept all allegations of the complaint as true, unless contradicted by the defendants' affidavits. When an allegation of the complaint is challenged, the court may examine facts outside of the complaint to determine whether venue is proper. In examining the record, the court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff.

Id. (marks and citations omitted).

## A. Venue Legal Standards

In the absence of a specialized venue statute, venue in a federal civil action is governed by 28 U.S.C. § 1391. Under this statute, a civil action may be brought in

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

> (3) if there is no district in which an action may
> otherwise be brought as provided in this section, any
> judicial district in which any defendant is subject to
> the court's personal jurisdiction with respect to such
> action.

28 U.S.C. § 1391(b).  "When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b).  If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under § 1406(a)."  Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex., 571 U.S. 49, 56 (2013).

**B. Analysis**

The First Amended Complaint asserts venue is proper "because Hoggatt and Mediavo are nonresidents and they can be sued in any county in this state."  (Doc. #88, ¶ 8.)  Defendants accurately point out that this is not the correct standard in federal court.  (Doc. #89, p. 17.)  Additionally, it is clear that § 1391(b)(1) does not apply since all defendants do not reside in the same state.  Hoggatt resides in Missouri, 28 U.S.C. § 1391(c)(1), and Mediavo is deemed to reside in Florida, 28 U.S.C. § 1391(c)(2).

Plaintiffs assert that venue is proper in the Middle District of Florida because a substantial part of the events giving rise to the claims occurred in that district, as required by § 1391(b)(2).  The Court agrees with plaintiffs.

Plaintiffs have alleged Hoggatt obtained the trade secrets and he and Mediavo are now using them to directly compete with

plaintiffs in Florida.  The use of the trade secrets, including use in Florida, is the basis for both misappropriation claims and, therefore, a substantial part of the underlying events.

Defendants suggest that even if Hoggatt obtained the trade secrets in Florida, "there is no question that a substantial part of the alleged misappropriation, including the development, production and distribution of competing extensions took place *outside* of Florida." (Doc. #89, p. 18.)  However, the question is not whether more events occurred outside of Florida, but simply whether a substantial part occurred here.  See BW Orchards, LLC v. Spiech Farms Ga., LLC, 2019 WL 2635541, *3 (S.D. Ga. June 26, 2019) ("It is important to note that Plaintiffs are not required to show that a majority of the events occurred in the Southern District of Georgia; rather, they only need to show that a substantial part of the events occurred here.").

Drawing all reasonable inferences and resolving the factual conflicts in plaintiffs' favor, the Court finds the alleged use of the trade secrets in Florida to directly compete with plaintiffs in Florida form a substantial part of the events giving rise to the misappropriation claims.  As such, venue is proper in this District.

Accordingly, it is now

**ORDERED:**

Defendants' Motion to Dismiss For Lack of Personal Jurisdiction, For Improper Venue and, Alternatively, for Failure to State a Claim Upon Which Relief Can Be Granted (Doc. #89) is **GRANTED** to the extent the First Amended Complaint alleges causes of action based on conduct occurring prior to September 21, 2016, and such portions of the claims are dismissed without prejudice. The motion is otherwise **DENIED**.

**DONE AND ORDERED** at Fort Myers, Florida, this ___23rd___ day of April, 2020.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Parties of record

41